```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/7/2020
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
PAUL HARDEN, :
      Plaintiff, :
v. : **OPINION AND ORDER**
 :
LORIE BADGER and SERGEANT SAHAD,[1] : 19 CV 3839 (VB)
     Defendants. :
--------------------------------------------------------------x

Briccetti, J.:

  Plaintiff Paul Harden, proceeding pro se and in forma pauperis, brings this action pursuant to 42 U.S.C. § 1983 against defendants Lorie Badger and Sergeant ("Sgt.") Sahad, alleging violations of his First and Eighth Amendment rights.

  Now pending is defendants' motion to dismiss the second amended complaint ("SAC") pursuant to Rule 12(b)(6). (Doc. #34).[2]

  For the following reasons, defendants' motion is GRANTED.

  The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

  It is difficult to decipher plaintiff's allegations, as the SAC is largely unintelligible. Nevertheless, for the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the SAC and draws all reasonable inferences in plaintiff's favor, as summarized below.

---

[1]  Incorrectly sued herein as "Siheed."

[2]  Plaintiff did not oppose the motion, despite having been granted multiple extensions of time to do so. (Docs. ##37, 39, 43, 44). Accordingly, by Order dated September 17, 2020, the Court deemed the motion fully submitted and unopposed. (Doc. #46).

1

At all relevant times, plaintiff was incarcerated at Green Haven Correctional Facility ("Green Haven") in Stormville, New York.

I. Alleged Misconduct

Plaintiff alleges he was "experiencing [] staff voyeurism" and was the "subject of uncouth cruel rumors and abusive statements." (Doc. #14 ("SAC") at ECF 11, 21).[3] He claims these allegedly false and abusive statements, as well as rumors about Green Haven staff and allegations of staff misconduct, were broadcast on a facility-wide "P.A. system speaker." (Id. at 21). According to plaintiff, Green Haven staff incorrectly believed he was responsible for broadcasting these statements with his mind. Plaintiff alleges staff members called him a whistleblower and retaliated against him by removing him from his work assignment in the "industry program" and withholding his personal mail for two months. (Id. at ECF 11, 21). Specifically, plaintiff alleges that, on March 7, 2017, Sgt. Sahad was caught going through the mail and had his mail in her possession.

Plaintiff also alleges staff members conspired to have him murdered. According to plaintiff, on March 8, 2017, a knife was sent to Green Haven in the laundry to "do a hit on Plaintiff." (SAC at ECF 11). He further claims that on March 11, 2017, Sgt. Sahad brought a knife into Green Haven and had it taped underneath a table in the mess hall so an inmate could murder him. According to plaintiff, Sgt. Sahad again brought a weapon into Green Haven on March 17, 2017, but was caught, suspended, and arrested on March 19, 2017, for doing so.

Plaintiff further alleges that on March 19, 2017, defendant Badger, a cook at Green Haven, was caught putting a foreign substance in his food, led out of the facility, and suspended

---

[3] "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing System.

2

for a week. According to plaintiff, Badger was Sgt. Sahad's girlfriend and sought revenge against plaintiff for Sgt. Sahad's suspension.

On July 13, 2017, plaintiff alleges he experienced a burning sensation in his stomach, had severe stomach pain, vomited up his food, and spit up blood. He alleges he requested—but did not receive—medical care for three days, during which time he continued to experience these symptoms. Plaintiff claims a nurse examined him during an emergency sick call on July 16, 2017. He further claims that on July 18, 2017, a doctor examined him and prescribed him antacid tablets. Plaintiff "strongly believes" his food was poisoned on July 12, 2017. (SAC at ECF 12).

Plaintiff also alleges lewd or pornographic videos of him were available on Instagram and for sale on a website. According to plaintiff, the videos mentioned his name, his prison cell location, discussed his family, and contained threats directed at him, including a threat directing gang members to murder him.

II.   Relevant Procedural History

Plaintiff filed his initial complaint on April 29, 2019. (Doc. #1). By Order dated June 24, 2019, the Court granted plaintiff leave to amend his initial complaint, concluding it failed to comply with Fed. R. Civ. P. 8 "because it [was] lengthy, include[d] unnecessary and unimportant details, [] lack[ed] sufficient relevant details to state a claim[,]" and because "many of Plaintiff's allegations appear[ed] to be implausible."[4] (Doc. #7 at ECF 3). The Court provided specific guidance regarding what relevant facts plaintiff should include in his amended complaint and directed him to "name as the defendants in the caption and in the statement of claim those

---

[4]   Fed. R. Civ. P. (8)(a)(2) requires a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

3

individuals who were allegedly involved in the deprivation of his federal rights." (Id. at ECF 4–5). The Order also instructed plaintiff that if he did "not know the name of a defendant, he may refer to that individual as 'John Doe' or 'Jane Doe' in both the caption and the body of the amended complaint." (Id. at ECF 4).

On September 12, 2019, plaintiff filed a letter and amended complaint, which the Court deemed a second amended complaint. (Doc. #18).[5] In the SAC, plaintiff requests that the Court "expunge" fifty-nine of the defendants named in the original complaint, and names as defendants Badger and Sgt. Sahad. (SAC at ECF 1–7).[6]

## DISCUSSION

I. <u>Legal Standard</u>

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009).[7] First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; <u>Hayden v. Paterson</u>, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded

---

[5] On September 10, 2019, plaintiff filed a document styled "Amended Complaint," labeling it with the docket number for this action. (Doc. #13). However, the amended complaint alleged claims against different defendants arising from different events that occurred at Clinton Correctional Facility in Dannemora, New York. By Order dated November 7, 2019, the Court severed these claims against the new defendants and transferred the amended complaint to the Northern District of New York. (Doc. #18).

[6] In the SAC caption, plaintiff names as a defendant John Doe Correction Officer working the 3 p.m. to 11 p.m. shift at the Office of Mental Health. However, plaintiff does not mention John Doe in the body of the second amended complaint and asserts no claims against John Doe. Accordingly, there is no John Doe defendant in this action.

[7] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

4

factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

The Court must liberally construe submissions of pro se litigants and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (collecting cases). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). Nor may the Court "invent factual allegations" a plaintiff has not pleaded. Id.

II.   Personal Involvement

To adequately plead a Section 1983 claim, a plaintiff must also "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. at 676. The complaint must "give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Atuahene v. City of

5

Hartford, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order).[8] A plaintiff cannot "lump[] all the defendants together in each claim and provid[e] no factual basis to distinguish their conduct." Id. Rather, a plaintiff must plead each defendant's personal involvement in an alleged constitutional violation.

A plaintiff may satisfy the personal involvement requirement by alleging one of the following:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).[9]

III.  Eighth Amendment Deliberate Indifference Claims

Liberally construed, the SAC alleges two types of deliberate indifference claims: first, for conditions of confinement, and second, for deliberate indifference to serious medical needs.

A.  Conditions of Confinement

Plaintiff fails plausibly to state an Eighth Amendment conditions of confinement claim.

A claim for deliberate indifference brought by a convicted prisoner is analyzed under the Eighth Amendment. See Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017). To state a

---

[8]  Because plaintiff is proceeding pro se, he will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

[9]  After Ashcroft v. Iqbal, district courts within this Circuit have been divided as to whether claims alleging personal involvement under the second, fourth, and fifth of these factors remain viable. See Marom v. City of New York, 2016 WL 916424, at *15 (S.D.N.Y. Mar. 7, 2016), reconsideration granted in part and denied in part, 2016 WL 5900217 (S.D.N.Y. July 29, 2016). The Second Circuit has yet to resolve this dispute. Id.

deliberate indifference claim, plaintiff's allegations must satisfy two prongs: an objective prong and a mens rea prong. To satisfy the objective requirement, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013). Plaintiff must allege prison officials deprived him "of his 'basic human needs' such as food, clothing, medical care, and safe and sanitary living conditions." Id. "Moreover, conditions of confinement may be aggregated to rise to the level of a constitutional violation, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." Id.

With respect to the mens rea requirement:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This "deliberate indifference" element is equivalent to the familiar standard of "recklessness" as used in criminal law.

Phelps v. Kapnolas, 308 F.3d 180, 185–86 (2d Cir. 2002).

Here, the SAC includes allegations of (i) "staff voyeurism," (ii) derogatory statements about plaintiff broadcast over a facility-wide speaker system, (iii) videos of plaintiff made and posted to Instagram and the Internet, including pornographic videos posted on websites calling him derogatory names and videos calling for his murder, and (iv) threats that officers would whip plaintiff if he did not lean his head back against his prison cell wall so they could study his brain with a device placed behind the wall. (SAC at ECF 11, 15, 26–27).

Plaintiff's allegations do not satisfy the mens rea prong of the deliberate indifference analysis. Specifically, plaintiff fails to allege who was responsible for any of the alleged conduct relevant to his conditions of confinement claim. Throughout the SAC, plaintiff merely alleges he

*is* a "victim" of harassing statements, "threats *are* being stated," he "*was* experiencing an [sic] continuous ongoing staff voyeurism sexual harassment issue," and there *were* tapes and videos about plaintiff being made and sold. (SAC at ECF 15, 26) (emphasis added). Indeed, plaintiff pleads no facts plausibly alleging the personal involvement of any Green Haven staff member, let alone defendants Badger or Sgt. Sahad.

Accordingly, plaintiff's Eighth Amendment conditions of confinement claim must be dismissed.

B.   Deliberate Indifference to Medical Needs

Plaintiff's deliberate indifference to serious medical needs claim fails because the SAC does not adequately allege either named defendant was personally involved in the denial of adequate medical care.

As with plaintiff's claims for deliberate indifference to conditions of confinement, plaintiff's allegations must satisfy an objective prong and a mens rea prong. Thus, to assert a claim for deliberate indifference to medical needs under the Eighth Amendment, plaintiff must plead facts alleging (i) a "sufficiently serious" deprivation of medical care, and (ii) the officials in question acted with a "sufficiently culpable state of mind." Salahuddin v. Goord, 467 F.3d 263, 279–80 (2d Cir. 2006).

Here, plaintiff alleges he was denied medical care for three days despite claims that he was experiencing a burning sensation in his stomach, had severe stomach pain, vomited up his food, and spit up blood. Even assuming plaintiff's allegations about his medical condition satisfy the objective prong, plaintiff does not allege any Green Haven employee was deliberately indifferent to his complaints. Moreover, plaintiff does not allege defendants Badger or Sgt.

8

Sahad were personally involved in any aspect of his medical care or responsible for the alleged delay.

Accordingly, plaintiff's Eighth Amendment deliberate indifference to serious medical needs claim must be dismissed.

IV.  First Amendment Retaliation Claim

To the extent the SAC can be liberally construed to assert a First Amendment retaliation claim, such claim also fails.

A.  Legal Standard

To adequately plead a First Amendment retaliation claim, a plaintiff must plausibly allege: (i) he engaged in constitutionally protected speech or conduct, (ii) a defendant took adverse action against him, and (iii) the protected speech and adverse action are causally connected. Dolan v. Connolly, 794 F.3d 290, 294 (2d Cir. 2015).

Courts approach prisoners' retaliation claims "with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." Dolan v. Connolly, 794 F.3d at 295. Accordingly, a prisoner pursuing a retaliation claim must not rest on "wholly conclusory" allegations, but rather must allege "specific and detailed" supporting facts. Id.

With respect to the first element, "[f]iling a lawsuit or an administrative complaint and filing prison grievances all constitute protected activities." Gilliam v. Black, 2019 WL 3716545, at *15 (D. Conn. Aug. 7, 2019) (citing Dolan v. Connolly, 794 F.3d at 294). Outgoing letters a prisoner sends to a third-party are protected speech, as well, except for letters that are "profane, abusive, []or threatening." See Bacon v. Phelps, 961 F.3d 533, 543 (2d Cir. 2020).

Regarding the second element, "[o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003). Retaliatory acts that fail to meet this standard are "simply de minimis and therefore outside the ambit of constitutional protection." Id. Courts tailor the inquiry "to the different circumstances in which retaliation claims arise, bearing in mind that prisoners may be required to tolerate more . . . than average citizens, before a retaliatory action taken against them is considered adverse." Id.

Finally, as to the causal connection element, a plaintiff must plausibly allege that the "unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." See Univ. of Tex. S.W. Med. Ctr. v. Nassar, 570 U.S. 338, 360 (2013). To sufficiently allege a causal connection, the plaintiff's "allegations must support an inference that the protected conduct was a substantial or motivating factor for the adverse action[]." Dorsey v. Fisher, 468 F. App'x 25, 27 (2d Cir. 2012). "[T]hat is to say, [plaintiff must plausibly allege] the adverse employment action would not have been taken absent the employee's protected speech [or conduct]." Stajic v. City of New York, 214 F. Supp. 3d 230, 235 (S.D.N.Y. 2016).

B. Application

Plaintiff fails plausibly to state a First Amendment retaliation claim because he does not establish a direct casual connection between any protected activity and the alleged adverse action.

Plaintiff claims he was accused of being a whistleblower and was removed from his work assignment located in the industry area of Green Haven. Plaintiff submits three documents in the

10

SAC that constitute protected speech: (i) a December 16, 2016, letter to Governor Cuomo (SAC at ECF 21); (ii) a July 20, 2017, grievance complaint (id. at ECF 15); (iii) and a July 24, 2017, letter to the Inmate Grievance Program (id. at ECF 26). Plaintiff pleads no additional speech that—even under a liberal interpretation—could be construed as protected. Plaintiff's letter to Governor Cuomo, the earliest protected speech, confirms the alleged adverse action (removal from his industry employment) occurred before any protected conduct. By plaintiff's own admission, Green Haven staff retaliated against him for statements they believed he made over the PA system. He does not allege that he complained, either formally or informally, of staff misconduct or harassment before submitting his letter to Governor Cuomo. Thus, plaintiff fails to allege his "protected conduct was a substantial and motivating factor for the adverse action." Dorsey v. Fisher, 468 F. App'x at 27.

Moreover, plaintiff fails to plead facts plausibly alleging the personal involvement of either Badger or Sgt. Sahad in the decision to remove plaintiff from his work assignment in the industry area.

Accordingly, plaintiff's First Amendment retaliation claim must be dismissed.

V.    Interference with Mail Claim

Defendants argue plaintiff fails to state a claim for interference with mail.

The Court agrees.

To state a First Amendment claim based on interference with the free flow of mail, plaintiff must adequately plead defendants "regularly and unjustifiably interfered" with his incoming mail. Davis v. Goord, 320 F.3d at 351. Prison officials may censor an inmate's mail only in furtherance of, and only to the extent "necessary or essential" to protect, the government's interest in security, order, or rehabilitation. Washington v. James, 782 F.2d 1134,

11

1139 (2d Cir. 1986). While one isolated instance of mail tampering does not amount to a constitutional violation, "as few as two [such] incidents . . . could constitute an actionable violation," provided the incidents (i) "suggested an ongoing practice" of unwarranted censorship, or (ii) "unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received." Davis v. Goord, 320 F.3d at 351. That said, "district courts have generally required specific allegations of invidious intent or of actual harm where the incidents of tampering are few and thus the implication of an actionable violation is not obvious on its face." Id.

As for Badger, the SAC contains no factual allegations regarding Badger's personal involvement in any alleged violation of plaintiff's First Amendment right based on interference with the free flow of mail.

As for Sgt. Sahad, plaintiff alleges only that he did not receive "any mail from [his] family for two months" and that Sgt. Sahad "was caught going through the mail on March 7, 2017 and she had [his] mail in her possession." (SAC at ECF 11). Even liberally construed, these allegations fail to support a claim based on interference with the free flow of mail. Specifically, plaintiff identifies no specific action taken by Sgt. Sahad to withhold or tamper with plaintiff's mail. Plaintiff's mail tampering allegations against Sgt. Sahad are conclusory and fail as a matter of law to state a viable claim.

Accordingly, plaintiff's First Amendment interference with mail claim must be dismissed.

VI.  Conspiracy Claim

Defendants argue plaintiff has failed to allege an actionable conspiracy claim arising under Section 1983.

The Court agrees.

To state a conspiracy claim under Section 1983, a plaintiff must plausibly allege "(1) an agreement between [two or more state actors or] a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Ciambriello v. County of Nassau, 292 F.3d 307, 324–25 (2d Cir. 2002).

"Given the relative ease with which conspiracy allegations may be brought, and the substantial disruption of governmental function that they can cause, a claimant is required to furnish more than conclusory allegations to avoid dismissal of a claim predicated on a conspiracy to deprive [the claimant] of his constitutional rights." Powell v. United States, 2020 WL 5126392, at *9 (S.D.N.Y. Aug. 31, 2020). Indeed, a plaintiff must "do more than append, on belief, the label of 'agreement' to otherwise independent charges of constitutional misconduct, in order to state a conspiracy claim." Id.

Here, plaintiff alleges Sgt. Sahad resorted to "unauthorized group affiliation tactics to have plaintiff murdered." (SAC at ECF 11–12). Plaintiff claims that between March 8 and March 17, 2017, a knife was sent to the Green Haven laundry to "do a hit on plaintiff[,]" Sgt. Sahad taped a knife underneath a table in the mess hall to facilitate a hit on plaintiff, and Sgt. Sahad dropped off a weapon at G-Block. (SAC at ECF 11). However, plaintiff's allegations of a conspiracy provide no "factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." See Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009). Indeed, plaintiff fails to allege the identity of any party with whom Sgt. Sahad conspired.

To the extent plaintiff's allegation that Badger was caught "putting a foreign poisonous substance in [his] diet tray," can be construed to suggest that Badger was a party to the

conspiracy, plaintiff himself claims the alleged poisoning was motivated by revenge—not based on any agreement to murder plaintiff. (SAC at ECF 11–12).

Accordingly, plaintiff's conspiracy claim must be dismissed.

VII. Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure instructs courts "should freely give leave" to amend a complaint "when justice so requires." Liberal application of Rule 15(a) is warranted with respect to pro se litigants, who "should be afforded every reasonable opportunity to demonstrate that [they have] a valid claim." Matima v. Celli, 228 F.3d 68, 81 (2d Cir. 2000). District courts "should not dismiss [pro se complaints] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000). But "a futile request to replead should be denied." Id. "Plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend." Jeanty v. Newburgh Beacon Bus Corp., 2018 WL 6047832, at *12 (S.D.N.Y. Nov. 19, 2018), appeal dismissed (Mar. 27, 2019).

Here, the Court granted plaintiff leave to amend after it concluded plaintiff's initial complaint did not comply with the pleading requirements of Rule 8. Indeed, the Court's June 24, 2019, Order specifically identified the deficiencies plaintiff would need to address in order to state claims for violations of the First and Eighth Amendments. Plaintiff failed to do so and "has not suggested he is in possession of facts that would cure the deficiencies identified in this opinion." Jeanty v. Newburgh Beacon Bus Corp., 2018 WL 6047832, at *12. The problems

with plaintiff's claims are "substantive," such that "better pleading will not cure" them. Cuoco v. Moritsugu, 222 F.3d at 112.

Accordingly, the Court declines to grant plaintiff leave to amend a second time.

## CONCLUSION

The motion to dismiss is GRANTED.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to terminate the motion (Doc. #34) and close this case.

Chambers will mail a copy of this Opinion and Order to plaintiff at the address on the docket.

Dated: December 7, 2020
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge